UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:                                                        Case No. 13-58587

MADISON HEIGHTS GROUP, LLC,            Chapter 11

              Debtor.                                 Judge Thomas J. Tucker
_____/

**OPINION REGARDING
DEBTOR'S MOTION FOR USE OF CASH COLLATERAL**

The Debtor in this case filed its voluntary Chapter 11 petition on October 8, 2013. The Debtor is owned and managed by the same persons who own and manage four other entities that also filed voluntary Chapter 11 bankruptcy petitions on October 8, 2013. The Debtors in the five Chapter 11 cases have filed motions for joint administration, but the cases are not yet being jointly administered.[1]

On October 11, 2013, the Debtor's primary secured creditor, CB 2011 Ohio and Michigan Retail, LLC ("CB 2011") filed a motion to dismiss this case, which Debtor opposes. On October 17, 2013, Debtor filed a First Day Motion seeking authority to use cash collateral (Docket # 25, the "Cash Collateral Motion"), which CB 2011 opposes. The Court held a hearing on the Cash Collateral Motion, and on the motion to dismiss, on October 23, 2013. For the reasons stated in this opinion, the Court will deny the Cash Collateral Motion.

The Debtor owns and operates an office building, and its only income is from the rent

---

[1] The Debtors and case numbers in the five cases are: Madison Heights Group, LLC, Case No. 13-58587; H & H Realty, LLC, Case No. 13-58588; H & H Royal Oak, LLC, Case No. 13-58589; Monroe Factory Shops, LLC, Case No. 13-58590; and Port Huron Factory Shops, LLC, Case No. 13-58594.

paid by the tenants of the office building.² CB 2011 has a mortgage in the Debtor's real estate, and also has an assignment of rents from the Debtor (the "Assignment of Rents"), to secure payment of the Debtor's debt to CB 2011, which debt the parties agree is substantial, undersecured, and in default.³

Debtor contends that the rental income from its tenants is cash collateral, which the Debtor should be authorized to use during the pendency of its Chapter 11 case, and Debtor argues that CB 2011's interest in the cash collateral would be adequately protected by a replacement lien in post-petition rental income.

CB 2011 opposes Debtor's Cash Collateral Motion on a number of grounds. One ground is that, according to CB 2011, as of the petition date, and since then, Debtor's right to rental income under its leases with the tenants is no longer property of the Debtor or of the bankruptcy estate. This is so, CB 2011 says, because it perfected and enforced its rights under the Assignment of Rents to become owner of such rents. CB 2011 argues, therefore, that Debtor does not have any cash collateral to use.

The undisputed facts regarding the Assignment of Rents include the following. The Assignment of Rents document that Debtor executed includes the following language:

> ASSIGNMENT. For valuable consideration, **Grantor hereby assigns**, grants a continuing security interest in, **and conveys to Lender all of Grantor's right, title and interest in and to the Rents from the following described property**. . .

---

² The Debtors in the four other cases listed in footnote 1 each own one or more commercial buildings, retail buildings, or an outlet mall. As to each Debtor in the four other cases, its only income is from rent paid by its tenants, and CB 2011 has an Assignment of Rents like the one in this case, applicable to all rents.

³ The same is true with respect to each of the Debtors in the four other cases.

2

> . . .
>
> THIS ASSIGNMENT IS GIVEN TO SECURE (1) PAYMENT OF
> THE INDEBTEDNESS AND (2) PERFORMANCE OF ANY
> AND ALL OBLIGATIONS OF GRANTOR UNDER THE NOTE,
> THIS ASSIGNMENT, AND THE RELATED DOCUMENTS.[4]

CB 2011 says, with supporting exhibits, and Debtor is unable to dispute, that well before the filing of Debtor's bankruptcy petition in this case, each of the following five events occurred to perfect and enforce the Assignment of Rents:

(1) Execution of the Assignment of Rents;

(2) Recording of the Assignment of Rents;

(3) Default under the Mortgage;

(4) Recording of Notice of Default; and

(5) Service of the Recorded Notice of Default and the instrument creating the Assignment of Rents upon the tenants.[5]

Under Michigan law, based upon the Michigan statute regarding the assignment of rents and case law, the above five steps are required in order for a creditor to obtain "complete enforcement of an assignment of rents." *See In re Woodmere Investors Ltd. Partnership*, 178 B.R. 346, 358-59 (Bankr. S.D.N.Y. 1995)(applying Michigan law)(and citing Mich.Comp.Laws §§ 554.231 and 554.232; other citations omitted); *In re Mount Pleasant Ltd. Partnership*, 144 B.R. 727, 732-33 (Bankr. W.D.Mich. 1992).

---

[4] Exhibit C to Docket # 28 (emphasis added).

[5] CB 2011 Objection (Docket # 28) at 2; Ex. B to Docket # 28. During the October 23 hearing, Debtor's counsel stated that the Debtor does not dispute that all of these things occurred pre-petition, except that Debtor's counsel could not then admit that the notice of default was served upon all of the tenants, because some of the tenants continued to pay rent to the Debtor, rather than paying the rent to CB 2011. Debtor's counsel said that this suggests that some of the tenants might not have actually received the notice of default from CB 2011. But Debtor's counsel also said that he did not know this to be the case.

3

CB 2011 argues that the legal consequence of these events, under its Assignment of Rents, is that beginning prior to the petition date and continuing thereafter, the Debtor had no ownership interest in the rights to receive rent from the tenants, or in the actual rental payments from those tenants. Rather, CB 2011 owns such rights and such payments. If CB 2011 is correct, then the rental income from Debtor's leases is not property of the bankruptcy estate, and therefore is not cash collateral as that term is defined in § 11 U.S.C. 363(a), and cannot be used by the Debtor, under 11 U.S.C. § 363(c)(2) or otherwise.

Debtor argues, on the other hand, that the Assignment of Rents should be construed as only giving CB 2011 a security interest in the rents, rather than outright ownership. As such, under the Debtor's view, the rents are cash collateral, which the Debtor can obtain authority to use under § 363(c)(2) without CB 2011's consent, by providing adequate protection for CB 2011's security interest in such rents.

Courts in other bankruptcy cases, involving an assignment of rents governed by Michigan law, have split on the issue now before the Court. Cases favoring CB 2011's position include the *Woodmere* and *Mt. Pleasant* cases cited above, and those cases held that rents in this situation are not property of the bankruptcy estate, and therefore cannot be used by the debtor. A case favoring Debtor's view, however, is *In re Newberry Square, Inc.*, 175 B.R. 910 (Bankr. E.D. Mich. 1994). That case disagreed with *Mt. Pleasant*, and held that the assignment of rents gives the creditor a security interest in the rents, rather than absolute ownership. Under the *Newberry Square* view, the Debtor retains an equitable interest in the rents, which makes them property of

4

13-58587-tjt    Doc 32    Filed 10/29/13    Entered 10/29/13 09:33:22    Page 4 of 7

the bankruptcy estate that may be used as cash collateral. 175 B.R. at 915.[6]

The Court has carefully reviewed the cases, and is persuaded that the correct view was that taken in the *Woodmere* and *Mt. Pleasant* cases. *Woodmere* is the more recent of these cases, and it agreed with *Mt. Pleasant* and disagreed with *Newberry Square*. The Court is particularly persuaded by the reasoning of the *Woodmere* case, including that court's view of the significance of the Michigan Court of Appeals decision in *Otis Elevator Co. v. Mid-America Realty Investors*, 522 N.W.2d 732 (Mich. App. 1994). *See Woodmere*, 178 B.R. at 359, 360.

During oral argument, Debtor's counsel stressed that the Assignment of Rents in this case includes not only language indicating an absolute transfer of ownership of the rents to the creditor, but also language indicating a security interest. Debtor's counsel argued that the same Assignment of Rents document cannot *both* transfer ownership of the rents to the creditor outright, *and* grant a security interest to the creditor in the rents. Debtor's counsel urged the Court to view the document as intending to grant only a security interest.

The language quoted above from the Assignment of Rents, and other language in that document, indicates an absolute transfer of the rents, and also indicates that the assignment was intended as security for payment of the debt owing to the creditor. But this apparently-conflicting language actually does not conflict; rather, it is reconcilable in favor of CB 2011's position. This is because under Michigan law, an assignment of rents has elements of *both* absolute transfer and security for payment of debt. The Assignment of Rents in this case, like the one in *Woodmere*, has the effect of transferring ownership of the rents to the mortgagee creditor

---

[6] In addition to *Newberry Square*, the Debtor relies on the case of *In re Buttermilk Towne Ctr., LLC*, 442 B.R. 558, 563 (B.A.P. 6th Cir. 2010). But that case is inapposite; it applied Kentucky law to an assignment of rents, not Michigan law. Michigan law clearly applies in this case.

5

CB 2011, but only until the mortgage is redeemed by the Debtor, or the mortgage debt is fully satisfied, at which point the ownership of the rents revests in the Debtor. In this way, there is both an absolute transfer of ownership and a security component in the assignment of rents. The court in *Woodmere* explained it this way:

> **Michigan law transfers ownership of the Rents to the mortgagee until the Mortgage is satisfied**. The equitable interest the Debtor alludes to as property of the estate was correctly characterized by the *Mount Pleasant* court as **an equitable interest in future rents and not in the present rents**. *In re Mount Pleasant Ltd. Partnership*, 144 B.R. at 737. **Under Michigan law, the interest revests if the mortgagor redeems the Mortgage. However, all rents collected by the mortgagee from the time of default to the time of redemption belongs to the mortgagee until the Debtor redeems the Property. Until that time, the Rents belong to [the mortgagee creditor]**. *Id.*
>
> A bankruptcy court in the Eastern District of Michigan recently ruled that the rents in a single asset case constituted cash collateral even though the mortgagee had complied with all the necessary requirements to enforce its assignment of rents. *See In re Newberry Square, Inc.*, 175 B.R. 910 (Banker. E.D. Mich.1994). The court decided that the *Otis Elevator Company* case was not controlling as it merely determined the "relative priority rights of two creditors of the mortgagee." *Id.* at 914. However, with all due respect to the *Newberry Square* court, this Court disagrees. While it is true that the ultimate issue decided by the Michigan Court of Appeals was the relative rights of two creditors, the court clearly determined that the judgment creditor could not garnish the mortgagor's interest in rents because the mortgagor *no longer had a valid property interest* (emphasis added). *Otis Elevator*, 206 Mich.App. 710, 715, 522 N.W.2d 732. The Michigan Court of Appeals determined the "relative" rights of the creditors based upon the property rights of the mortgagor. Moreover, the *Otis Elevator* court cited with approval the *Mount Pleasant* case. *Id.* at 714. Thus, this Court does not believe that the *Newberry Square* case requires a different outcome.
>
> The Debtor alternatively argues that the future rents should be used to fund its plan since the Plan will cure the default and that curing the default would be the equivalent of redemption. **A review of**

> **Michigan law reveals that redemption is consistently defined as payment in full.** *See, e.g.*, Mich.Comp. Laws section 600.5744(6) ("writ of restitution shall not issue if ... the amount as stated in the judgment, together with the taxed costs, is paid...."); Mich.Comp. Laws section 570.1121(6) ("[r]edemption from a foreclosure sale is complete upon payment of all sums set forth in the judgment of foreclosure, together with any sums due for the payment of taxes or insurance premiums...."). Thus, this Court declines to hold that "cramming" down a creditor pursuant to section 1129(b)(1) constitutes redemption for the purposes of Michigan law. To do so would be in contravention of *Butner*; no matter what state law provided, a mortgagee's entitlement to rents would be cut short by the mortgagor's bankruptcy filing and a plan of reorganization which gives the mortgagee much less than he is entitled to pursuant to state law.
>
> **Therefore, the Rents collected by [the mortgagee creditor] do not constitute property of the estate and cannot be used in the Debtor's reorganization.**

*Woodmere*, 178 B.R. at 360 (emphasis added, footnote omitted).

The language in the Assignment of Rents in this case fits within these legal principles, and is fully consistent with them. The Court concludes that the conclusions stated in *Woodmere*, quoted above, apply to the Assignment of Rents in this case. And the Court agrees with *Woodmere*, and respectfully disagrees with *Newberry Square*.

For these reasons, the Court concludes that there is no cash collateral that the Debtor can use in this case. The rental income from the Debtor's tenants, and the right to receive that income, belongs entirely to CB 2011, unless and until the Debtor fully pays its debt to CB 2011, or redeems the CB 2011 mortgage after a foreclosure sale. The Debtor's cash collateral motion therefore must be denied. The Court will enter an order denying that motion.

**Signed on October 29, 2013**  /s/ Thomas J. Tucker
                                **Thomas J. Tucker**
                                **United States Bankruptcy Judge**