UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE: Case No. 13-58587

MADISON HEIGHTS GROUP, LLC, Chapter 11

        Debtor. Judge Thomas J. Tucker
_____/

**OPINION REGARDING DEBTOR'S
MOTION FOR RECONSIDERATION**

This case is before the Court on the Debtor's motion entitled "Motion for Reconsideration," filed November 12, 2013 (Docket # 37, the "Motion"), which seeks reconsideration of, and relief from, two orders the Court entered in this case on October 29, 2013: (1) the Order entitled "Order Denying Debtor's Motion for Use of Cash Collateral" (Docket # 33); and (2) the Order entitled "Order Granting Creditor's Motion to Dismiss this Case, With a 180-Day Bar to Refiling" (Docket # 35). For the reasons stated in this opinion, the Motion will be denied.

**I. The Court's general conclusions**

The Court finds that the Motion fails to demonstrate a palpable defect by which the Court and the parties have been misled, and that a different disposition must result from a correction thereof. *See* L.B.R. 9024-1(a)(3)(E.D. Mich.).

In addition, the Court finds that the allegations and arguments in the Motion do not establish any valid ground for relief from either of the orders at issue, under Fed.R.Civ.P. 60(b), applicable under Fed.R.Bankr.P. 9024; or under Fed.R.Civ.P. 59(e), applicable under Fed.R.Bankr.P. 9023; or otherwise.

In addition, the Court notes the following.

## II. Discussion of specific issues

### A. Debtor waived its reconsideration arguments

The Debtor waived every argument that Debtor makes in the Motion, because Debtor makes these arguments for the first time in a motion for reconsideration. Debtor waived these arguments by failing to make them before the Court ruled on the motions and entered the two October 29 Orders. *See, e.g.*, *Riverview Trenton R.R. Co. v. DSC, Ltd.* (*In re DSC, Ltd*), 486 F.3d 940, 947 (6th Cir. 2007)(citing with approval, and applying, *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994) for the proposition that "objections raised for the first time in a reconsideration motion are deemed to have been waived"); *Evanston Ins. Co. v. Cogswell Props., LLC*, 683 F.3d 684, 692 (6th Cir. 2012)(citations omitted)("Arguments raised for the first time in a motion for reconsideration are untimely and forfeited on appeal.").[1]

### B. Debtor's arguments are without merit in any event

Debtor's arguments are without merit, in any event.

#### 1. There was no "contested" or "open" question of fact

Debtor's first argument is that "[w]hether CB 2011 effected service on the Debtor's tenants remained an open question at the close of the [October 23, 2013] hearing."[2] And, Debtor

---

[1] The Sixth Circuit noted in the *Evanston Ins. Co.* case that this waiver rule can be overlooked "'in exceptional cases. . . or when the rule would produce a plain miscarriage of justice.'" *See id.* (quoting *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008)); *see also Wiley*, 20 F.3d at 226 (citations omitted)("[W]e will review such objections [*i.e.*, objections, to a party's materials submitted in support of a summary judgment motion, that were made for the first time in a motion for reconsideration] only to avoid a gross miscarriage of justice.").

The Court concludes that in this case the normal waiver rule should be applied, because doing so does not produce a "plain" or "gross" miscarriage of justice; nor is this an "exceptional case" for overlooking the normal waiver rule.

[2] Mot. (Docket # 37) at 4.

now argues, "[w]hether or not the Debtor['s] tenants were served notice of the Assignment of Rents is a contested question of fact that affects the status of rents. . . ."[3] Debtor is incorrect. This was *not* "an open question at the close of the hearing," nor was it "a contested question of fact." Rather, it was clear from the written argument filed by Debtor in support of its cash collateral motion, and from the oral argument of Debtor's counsel at the October 23, 2013 hearing, that while the Debtor could not affirmatively admit that all of the tenants actually received service of the recorded notice of default and the instrument creating the Assignment of Rents, Debtor was *not* arguing that one or more of the tenants did not receive service. Debtor made only *other* arguments in support of Debtor's cash collateral motion and in opposition to CB 2011's argument that the Debtor had no interest in rents, due to the Assignment of Rents. Debtor expressly chose *not* to contest CB 2011's allegation that it served the tenants with the required notice pre-petition.

In the Court's October 29, 2013 Opinion (Docket # 32), the Court stated the following:

> **CB 2011 says, with supporting exhibits, and Debtor is unable to dispute, that well before the filing of Debtor's bankruptcy petition in this case, each of the following five events occurred to perfect and enforce the Assignment of Rents:**
>
> (1) Execution of the Assignment of Rents;
>
> (2) Recording of the Assignment of Rents;
>
> (3) Default under the Mortgage;
>
> (4) Recording of Notice of Default; and

---

[3] *Id.* at 4.

3

13-58587-tjt    Doc 38    Filed 03/17/14    Entered 03/17/14 17:10:06    Page 3 of 18

> **(5) Service of the Recorded Notice of Default and the instrument creating the Assignment of Rents upon the tenants.**

[Footnote 5 of the Court's opinion:]

CB 2011 Objection (Docket # 28) at 2; Ex. B to Docket # 28. During the October 23 hearing, Debtor's counsel stated that the Debtor does not dispute that all of these things occurred pre-petition, except that Debtor's counsel could not then admit that the notice of default was served upon all of the tenants, because some of the tenants continued to pay rent to the Debtor, rather than paying the rent to CB 2011. Debtor's counsel said that this suggests that some of the tenants might not have actually received the notice of default from CB 2011. But Debtor's counsel also said that he did not know this to be the case.

[continued text of the opinion:]

> Under Michigan law, based upon the Michigan statute regarding the assignment of rents and case law, the above five steps are required in order for a creditor to obtain "complete enforcement of an assignment of rents."[4]

Before the Court held the hearing on October 23, 2013, and in response to CB 2011's objection to Debtor's cash collateral motion, Debtor filed a written response to CB 2011's arguments about the Assignment of Rents. In that written brief, filed October 22, 2013, Debtor did not dispute CB 2011's allegation that pre-petition, CB 2011 had taken all five steps necessary under Michigan law to enforce its Assignment of Rents, including serving all of the Debtor's tenants with the recorded notice of default and the instrument creating the Assignment of Rents. CB 2011 had specifically alleged this, in its October 22, 2013 objection to Debtor's cash

---

[4] Opinion Regarding Debtor's Motion for Use of Cash Collateral (Docket # 32) at 3 n.5 (emphasis added)(citations omitted).

4

collateral motion.[5] Debtor's written response to CB 2011's objection did not dispute this, but rather argued, only for certain *other* reasons, that the Debtor's rental income is cash collateral that it could use during the bankruptcy case.[6]

The Court questioned Debtor's counsel about this subject during the October 23, 2013 hearing. Following is the entire discussion that occurred during the hearing about this subject:

> [Judge:]
>
> I had another question. This may be, really it's related also to the cash collateral motion as well as the motion to dismiss. The creditor CB 2011 argues in objecting to the cash collateral motions, that pre-petition it took all of the five steps required under Michigan law for it to be able to enforce the Assignment of Rents including service on the tenants of the notice. Do Debtors dispute that or agree with that? You didn't dispute that in the papers you filed yesterday.
>
> [Debtor's attorney Peter Halabu:]
>
> No. And I don't think we dispute that. There are some tenants that seem never to have gotten it, or not to have heeded it, but we don't dispute that they perfected the assignment.
>
> [Judge:]
>
> Well, I didn't ask you about perfection in those words. The question I asked you, the answer is what?
>
> [Halabu:]
>
> I'm sorry say it again.
>
> [Judge:]

---

[5] CB 2011 Ohio and Michigan Retail, LLC's Objection to Debtor's Motion for Authority to Use Cash Collateral, filed October 22, 2013 (Docket # 28) at 2 (citing Ex. C attached).

[6] Response to Objection to Motion for Use of Cash Collateral, filed October 22, 2013 (Docket # 30).

5

> That they took all of the steps, the five steps under Michigan law
> required to, in order to enforce the Assignment of Rents, and
> require the tenants to pay them.
>
> [Halabu:]
>
> No. We don't dispute that.
>
> [Judge:]
>
> Okay. In all of the five cases?
>
> [Halabu:]
>
> In each of the five cases.
> . . .
>
> [Halabu:]
>
> . . . co-counsel reports that we are not actually positive that every
> tenant got notice of the Assignment of Rents, again, suggested by
> the fact that some tenants continue to send rents to us. But again,
> we did not object to that in our response.[7]

Based on this, the Court concluded, and reiterates that conclusion now, that Debtor was *not* disputing CB 2011's allegation that it served all of Debtor's tenants with the required papers. There was and is no "contested question of fact" or open question about this, because Debtor expressly chose not to contest it, before the Court made its ruling on the cash collateral motion.

If and to the extent the Debtor now seeks to contest this, it is a new argument that Debtor is making for the first time in a motion for reconsideration, and Debtor therefore has waived any such argument. *See* cases cited above. In addition, the Court notes that even now, in its motion for reconsideration, the Debtor does not point to any single particular tenant that Debtor contends

---

[7] There is no transcript on file of the October 23 hearing. An mp3 audio recording of the hearing is on file in this case, however, at Docket # 31. The discussion quoted here is found at 41:22 to 42:54, and 44:05 to 44:30 of that audio recording of the hearing.

6

did not actually receive the served notice of default and Assignment of Rents papers from CB 2011.

For these reasons, Debtor's first argument in its Motion is without merit.

2. **In addition to Debtor having waived its argument based on 11 U.S.C. § 541(a)(6), that argument is incorrect in any event.**

Debtor argues that even if this Court's ruling is correct regarding Michigan law and the Assignment of Rents, the rents are still property of the bankruptcy estate, because of 11 U.S.C. § 541(a)(6). That section states the general rule that property of the bankruptcy estate includes "[p]roceeds, product, offspring, **rents**, or profits of or from property of the estate, . . .." (emphasis added). Because the underlying real estate from which the rents arise was owned by the Debtor and therefore became property of the bankruptcy estate under 11 U.S.C. § 541(a)(1), Debtor says, the "rents" from that real estate necessarily became property of the bankruptcy estate under § 541(a)(6). This is so, Debtor argues, even if the Debtor had no rights or ownership interest in the rents, and no right to collect or use the rents, as of the petition date, because of the Assignment of Rents to CB 2011.

First, the Court reiterates that the Debtor waived this argument, because Debtor did not make this argument before the Court ruled on Debtor's cash collateral motion. Second, the argument is wrong on the merits.

The Debtor cites three bankruptcy court decisions in support of its § 541(a)(6) argument, two of which are from the Southern District of Texas, and one of which is from the District of Kansas. These three cases do support Debtor's argument under § 541(a)(6): *In re Amaravathi Ltd. P'ship*, 416 B.R. 618, 622-28 (Bankr. S.D. Tex. 2009); *In re Las Torres Dev., L.L.C.*, 408

7

B.R. 876, 885 (Bankr. S.D. Tex. 2009); *In re Bryant Manor, L.L.C.*, 422 B.R. 278, 287-89 (Bankr. D. Kan. 2010).[8] This Court respectfully disagrees with those cases, and rejects Debtor's interpretation of § 541(a)(6), for the following reasons.

First, the Court finds persuasive, and agrees with, each of the reasons argued in the American Bankruptcy Institute Journal article cited at page 10 of Debtor's Motion, as to why the three cases cited by Debtor are incorrect. *See* Paul Rubin, *Absolute Assignments of Rents Survive Filings,* 30 Am. Bankr. Inst. J. 50 (Feb. 2011). That article explains in detail how the interpretation of § 541(a)(6) advocated by the *Amaravathi* case and the other two cases cited by Debtor (the "Amaravathi trio") was not the intent of Congress, and would lead to absurd results.

Second, the Court agrees with the reasoning and holding of the bankruptcy court in a more recent case, which rejected Debtor's interpretation of § 541(a)(6) and held that state law determines whether and to what extent the Debtor has an ownership interest in rents that are subject to an assignment of rents. *See In re Builders Grp. & Dev. Corp.*, 502 B.R. 95, 116-17, (Bankr. D. Puerto Rico 2013). That case cited and agreed with the ABI Journal article cited above. And the court stated the following in support of its conclusions:

> Builders Group argues that the controlling law is 11 U.S.C. § 541(a)(6), which preempts state law and makes inapplicable the

---

[8] The other cases cited by the Debtor do not support Debtor's argument. *See In re Bethesda Air Rights Ltd. P'ship*, 117 B.R. 202, 205-06, 209 (Bankr. D. Md. 1990) (court determined that creditor's security documents gave creditor only a security interest in the rents under Maryland law, not ownership, and therefore such rents were property of the bankruptcy estate, both as of the commencement of the bankruptcy case and thereafter, citing §§ 541(a) and 541(a)(6)); *In re Lockbaum*, No. 09 B05704, 2010 WL 3522354 (Bankr. N.D. Ill. September 2, 2010) (court held that Chapter 7 debtor's rents received after filing the bankruptcy case from a condominium that he owned were property of the bankruptcy estate, citing § 541(a)(6); the case did not involve an assignment of rents, or any issue about whether a secured creditor owned the rents or merely had a security interest in the rents as of the petition date); *In re Highlands of Montour Run, LLC*, 450 B.R. 828, 833-34 (Bankr. N.D. Ill. 2011) (see description of this case later in this opinion).

8

United States Supreme Court decision in *Butner v. U.S.,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Builders Group bases its argument on the case of *In re Amaravathi Ltd. Partnership,* 416 B.R. 618 (Bankr.S.D.Tex.2009), in which the court held that the post-petition rents were property of the estate because Section 541(a)(6) governed the outcome of the case since it mandates that rents generated from property of the estate be included within the bankruptcy estate. In *In re Amaravathi Ltd. Partnership,* the bankruptcy court determined that in enacting Section 541(a)(6), Congress decided to supersede state law so that debtors could use post-petition rents to operate and reorganize. *See In re Amaravathi Ltd. Partnership,* 416 B.R. at 624–625.

This court does not agree with the Debtor's analysis of the holding in *In re Amaravathi Ltd. Partnership* for the following reasons: (i) Section 541 is not intended to expand a debtor's rights beyond those that exist pursuant to state law. *See* Paul Rubin, *Absolute Assignments of Rents Survive Filings,* 30–1 ABIJ 50 (February 2011). The House of Representatives and Senate reports provide that Section 541, "is not intended to expand the debtor's rights against others more than they exist at the commencement of the case." *Moody v. Amoco Oil Co.,* 734 F.2d 1200, 1213 (7th Cir.1984) (quoting House Report, H.R., Rep. No. 595, 95th Cong., 1st Sess. reprinted in 1978 U.S.Code Cong. & Ad. News 5787); *Drewes v. Vote (In re Vote),* 276 F.3d 1024, 1026 (8th Cir.2002) (quoting Senate Report, S.Rep. No. 95–989. at 82 (1978) reprinted in 1978 U.S.C.C.A.N. 5787, 5868); and (ii) "[t]here is a strong presumption against inferring congressional pre-emption of state law property rights in the bankruptcy context. When Congress intends to displace state nonbankruptcy law it has done so clearly and explicitly, using the phrase 'notwithstanding any other applicable non-bankruptcy law' or similar language, which appears in other Code provisions, such as §§ 1123(a), 541(c)(1), 728(b) and 363(1). Neither the legislative history nor the text of § 541 reflects an intent to preempt state law property rights in rents absolutely assigned pre-petition." Paul Rubin, *Absolute Assignments of Rents Survive Filings,* 30–1 ABIJ 50 (February 2011).
. . .

State law determines whether the Debtor or [the creditor] owns the rents.

502 B.R. at 116-17.

9

13-58587-tjt    Doc 38    Filed 03/17/14    Entered 03/17/14 17:10:06    Page 9 of 18

Numerous cases, decided both before and after the 2009/2010 *Amaravathi* trio of cases, have held that state law governs this issue, and have *not* applied § 541(a)(6) to establish a blanket rule that rents always are property of the bankruptcy estate, regardless of an assignment of rents and what the applicable state law is on that subject. Some of these cases did not cite or discuss § 541(a)(6) in reaching their conclusion. Some of these cases cited § 541(a)(6), and thereby showed the court's awareness of that section of the Bankruptcy Code, and nonetheless held that state law controls. One of these is the decision of United States Court of Appeals for the Third Circuit in *First Fidelity Bank, N.A. v. Jason Realty, L.P.* (*In re Jason Realty, L.P.*), 59 F.3d 423 (3d Cir. 1995). *Jason Realty* was decided in 1995, some 16 years after the Bankruptcy Code, including § 541(a)(6), became effective in 1979. In that case, in stating the issue before it, the Third Circuit cited both § 541(a)(1) and § 541(a)(6), 59 F.3d. at 426, then went on to hold the following, on the next page of its opinion:

> Assignments of rents are interests in real property and, as such, are created and defined in accordance with the law of the situs of the real property. *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979); *Commerce Bank,* 5 F.3d at 37. A federal court in bankruptcy is not allowed to upend the property law of the state in which it sits, for to do so would encourage forum shopping and allow a party to receive "a windfall merely by reason of the happenstance of bankruptcy." *Butner,* 440 U.S. at 55, 99 S.Ct. at 918. Thus, in determining whether the parties' assignment of rents transferred title or, instead, created a "security interest," our goal must be to ensure that [the creditor] "is afforded in federal bankruptcy court the same protection [it] would have under state law if no bankruptcy had ensued." *Id.* at 56, 99 S.Ct. at 918. We thus turn to New Jersey law to classify the parties' interests in the rents.

59 F.3d at 427. The court then went on to hold that the rents at issue were not property of the bankruptcy estate, based upon the effect of the assignments of rents agreement under New Jersey

10

law. Because of this, the rents were "not available as cash collateral nor as a funding source for the debtor's reorganization plan." *Id*. at 425. Thus, in *Jason Realty* the Third Circuit necessarily rejected Debtor's interpretation of § 541(a)(6).

In 2005, the Third Circuit reached the same outcome as it had in *Jason Realty*, applying Pennsylvania law to an assignment of rents in a Chapter 7 case. *Sovereign Bank v. Schwab*, 414 F.3d 450, 453 (3d Cir. 2005). In that case, the Third Circuit quoted § 541(a)(6) in its opinion. *Id*. at 452-53 & n.4. Nonetheless, the court applied state law as determinative of the debtor's and the bankruptcy estate's lack of ownership interest in rents, because of an assignment of rents. *Id*. at 453 & n.5 (citing several cases, including the Third Circuit case *Commerce Bank v. Mountain View Village, Inc.*, 5 F.3d 34, 38 (3d Cir. 1993).) *See also In re Surma*, No. 11-37991(MBK), 2014 WL 413572 (Bankr. D.N.J. February 4, 2014)(following and applying *Jason Realty* to determine that a Chapter 11 debtor did not own rents and could not use rents, based upon an assignment of rents under New Jersey law).

Although they do not discuss § 541(a)(6), the three cases cited and discussed in this Court's October 29, 2013 opinion regarding Debtor's cash collateral motion all applied Michigan law, rather than § 541(a)(6), to determine the nature and extent of the bankruptcy estate's ownership interest in rents under an assignment of rents. *See In re Woodmere Investors Ltd. P'ship*, 178 B.R. 346, 358-59 (Bankr. S.D.N.Y. 1995)(applying Michigan law)(citing Mich.Comp.Laws §§ 554.231 and 554.232); *In re Mount Pleasant Ltd. P'ship*, 144 B.R. 727, 732-33 (Bankr. W.D. Mich. 1992); *In re Newberry Square, Inc.*, 175 B.R. 910 (Bankr. E.D.

11

Mich. 1994). Of these three cases, the Debtor relied on the *Newberry Square* case in arguing its cash collateral motion in this Court.[9]

One of the cases cited in the Debtor's Motion, in support of its § 541(a)(6) argument, actually supports a contrary view. *In re Highlands of Montour Run, LLC*, 450 B.R. 828, 833-34 (Bankr. N.D. Ill. 2011), the bankruptcy court held that a Chapter 11 debtor could not use rents from a residential apartment complex that the Debtor owned, because of an assignment of rents. The court applied Pennsylvania law to reach that conclusion, 450 B.R. at 834, notwithstanding what the court characterized as "the general rule, embodied in 11 U.S.C. § 541(a)(6), that post-petition rents generated from property of the estate are themselves property of the estate." *Id*. at 833. The court reached its conclusions after noting the debtor's argument to the contrary, and the debtor's citation of the *Amaravathi* trio of cases. *Id*.

For all of these reasons, the Court rejects Debtor's argument based upon § 541(a)(6).

**3. Debtor's other arguments, about Michigan law**

Debtor makes some additional arguments in its Motion. For the reasons that follow, the Court rejects these arguments.

First, Debtor did not make the arguments to the Court before the Court denied Debtor's cash collateral motion and granted CB 2011's motion to dismiss this case. Accordingly, Debtor has waived these arguments. Second, the arguments do not warrant relief for Debtor in any event.

---

[9] *See* Debtor's Response to Objection for Use of Cash Collateral, filed October 22, 2013 (Docket # 30) at 2.

Debtor argues that this Court has misconstrued Michigan law. Debtor argues that two decisions of the Michigan Supreme Court drew a distinction, under Michigan's assignment of rents statute, between the right of the mortgagee/assignee of rents to *collect* rents after default, and *ownership* of the mortgagor's/assignor's right to the rents. Debtor argues that under an assignment of rents, Michigan law only gives the creditor (mortgagee/assignee of rents) the right to collect the rents, and not ownership of the debtor's right to the rents. Because of this, Debtor argues that it retained ownership of the rents, and CB 2011 at most obtained only a right to collect those rents. And according to Debtor, Debtor's retention of such ownership of the rents is sufficient to make the rents property of the bankruptcy estate, *and* give Debtor the right to use those rents (which under Debtor's argument it has no right to collect) under 11 U.S.C. § 363, provided it gives adequate protection to CB 2011.

The Debtor's attempt to draw a distinction under Michigan law, between the right to collect rents and the ownership of the Debtor's right to the rents, is incorrect. The two Michigan Supreme Court cases that Debtor cites do not support Debtor's argument. *Security Trust Co. v. Sloman*, 233 N.W. 216 (Mich. 1930); *Smith v. Mut. Benefit Life Ins. Co.*, 106 N.W. 2d 515 (Mich. 1960). *Sloman* was decided in 1930, when the Michigan assignment of rents statute stated that "it shall be lawful to assign the rents and profits of the property mortgaged to the trustee or trustees under the trust mortgage or deed of trust. . . ." The statute was similar to the current statute, Mich.Comp.Laws §§ 554.231 and 554.232. *Sloman* dealt with a situation in which there was a foreclosure sale of the mortgaged real estate, at which the purchaser at the foreclosure sale was a third party — not the mortgagor or the mortgagee. The question in *Sloman* was who is entitled to the rents from the premises covered by the mortgage, during the

13

time period between the foreclosure sale and the expiration of the period of redemption of the foreclosure sale. Is it "the mortgagor, mortgagee, or purchaser[?]" 233 N.W. at 218. The court held that it was the mortgagee, based on the assignment of rents statute. If the property is not redeemed from the foreclosure sale, so that the purchaser becomes the owner of the real property, the mortgagee's right to the rents ceases, and the purchaser, as the new owner of the real property, becomes entitled to any rents from the property thereafter, free and clear of the mortgage and the assignment of rents that the mortgagor gave to the mortgagee in connection with the now-foreclosed mortgage. *Id*. at 219-20.

The court in *Sloman* did speak at times in its opinion of the mortgagee's right "to collect rents," based on the assignment of rents, but the court's opinion makes clear that the mortgagee who has an assignment of rents, after default, owns the Debtor's rights to the rents. The *Sloman* court stated this:

> The proper construction of the act does not seem difficult. It will be given effect in harmony with its language and purpose if we hold, and we do:
>
> 1. **That the [mortgagee] is entitled to the rents upon default and performance of the statutory conditions. . . .**
>
> 2. That the right of the [mortgagee] to collect rents, . . . continues after [the foreclosure] sale, if there be a deficiency, until the deficiency is paid; . . . The right ceases at the expiration of the period of redemption if the premises are not redeemed.
>
> 3. That the purchaser on foreclosure sale takes only the mortgaged property, not the rents, subject to the owner's right of possession during the redemption period, as it may be modified by the right of the [mortgagee] to collect rents for deficiency.
>
> In fine, **the purpose of the act is to put the [mortgagee] in the shoes of the mortgagor until the debt is paid, with all his rights**

> **to the rents and profits** as long as he, under the general law of
> mortgages, could enjoy them.

233 N.W. at 219-20 (emphasis added).

In the *Smith* case, decided by the Michigan Supreme Court in 1960, when the assignment of rents statute was the version that had been enacted in 1953, the court simply reiterated the holdings in the *Sloman* case. This included the holding that the mortgagee who has an assignment of rents is entitled to the rents from the time of default, and during the time period between a foreclosure sale of the mortgaged real estate and the end of the foreclosure redemption period. In so ruling, the *Smith* court quoted extensively from the *Sloman* case, with approval, including all of the language from the *Sloman* case that is quoted above. *See* 107 N.W. 2d at 519-20.

Thus, the *Sloman* and *Smith* cases cited by the Debtor actually support, rather than undercut, this Court's holdings in its October 29, 2013 opinion regarding the Debtor's cash collateral motion — *i.e.*, as stated in this Court's quotation from the *Woodmere* case in the October 29, 2013 opinion,

> **Michigan law transfers ownership of the Rents to the mortgagee until the Mortgage is satisfied**. The equitable interest the Debtor alludes to as property of the estate was correctly characterized by the *Mount Pleasant* court as **an equitable interest in future rents and not in the present rents**. *In re Mount Pleasant Ltd. Partnership*, 144 B.R. at 737. **Under Michigan law, the interest revests if the mortgagor redeems the Mortgage. However, all rents collected by the mortgagee from the time of default to the time of redemption belongs to the mortgagee until the Debtor redeems the Property. Until that time, the Rents belong to [the mortgagee creditor]**. *Id.*
>
> . . .

> The Debtor alternatively argues that the future rents should be used to fund its plan since the Plan will cure the default and that curing the default would be the equivalent of redemption. **A review of Michigan law reveals that redemption is consistently defined as payment in full.** *See, e.g.*, Mich.Comp. Laws section 600.5744(6) ("writ of restitution shall not issue if ... the amount as stated in the judgment, together with the taxed costs, is paid...."); Mich.Comp. Laws section 570.1121(6) ("[r]edemption from a foreclosure sale is complete upon payment of all sums set forth in the judgment of foreclosure, together with any sums due for the payment of taxes or insurance premiums...."). Thus, this Court declines to hold that "cramming" down a creditor pursuant to section 1129(b)(1) constitutes redemption for the purposes of Michigan law. To do so would be in contravention of *Butner*; no matter what state law provided, a mortgagee's entitlement to rents would be cut short by the mortgagor's bankruptcy filing and a plan of reorganization which gives the mortgagee much less than he is entitled to pursuant to state law.
>
> **Therefore, the Rents collected by [the mortgagee creditor] do not constitute property of the estate and cannot be used in the Debtor's reorganization.**

*Woodmere*, 178 B.R. at 360 (emphasis added)(footnote omitted).

And, contrary to Debtor's argument, the *Smith* and *Sloman* cases are not inconsistent with the holding of the Michigan Court of Appeals in the 1994 case *Otis Elevator Co. v. Mid-America Realty Investors*, 522 N.W. 2d. 732 (Mich. Ct. App. 1994). *Otis Elevator* held that under Michigan law, after a default occurs by a debtor who has assigned rents to mortgaged real estate, the assignee creditor owns the rents. The debtor "no longer ha[s] a valid property interest in the rents after its default on its mortgage[.]" 522 N.W. 2d. at 734.

Next, Debtor argues that even after default, it retained rights in the rents because (1) "CB 2011 is required under Michigan law to apply the rents for their benefit, by applying them to the debt - accrued interest, maintenance cost, insurance, taxes and the deficiency," citing the *Smith*

16

case. And Debtor says it has a contingent right to regain ownership of the rents if and when its debt to CB 2011 is fully satisfied. For these reasons, Debtor argues that it does continue to have certain ownership rights in the rents, even after its default, under Michigan law. Because of that, in turn, Debtor apparently argues that it has a present right to use rents now, before its debt to CB 2011 is fully satisfied, as cash collateral under Bankruptcy Code § 363, and to use those rents to fund a Chapter 11 reorganization plan.

Even if Debtor is correct in asserting that it has these limited rights under Michigan law referred to above with respect to the rents, under § 363 the Debtor may only "use" such rights that it owns. Those rights do not include any right to use in any way, or to obtain or control, the rents, unless and until the CB 2011 debt is paid in full. Even under this view of Debtor's rights with respect to the rents, therefore, Debtor's cash collateral motion had to be denied, and the case had to be dismissed, because unless and until the CB 2011 debt is paid in full, Debtor has no right or ability to use, obtain, or control any of the rents from Debtor's real estate.

One of the cases cited by Debtor's Motion rejected an argument very similar to Debtor's current argument:

> The Debtor also argues that it retains an interest in the rents as the Bank must account to the Debtor for the amount of rents received and credit the mortgage debt accordingly. . . .
>
> What the Debtor fails to understand is that while it may possess a right to an accounting, it no longer possesses the license to collect and use the rents as it pleases, but is now left with lesser rights. When the Bank came into possession of the Property and served notice upon tenants, it enforced its right to rents under the Mortgage. The Debtor may have a right to an accounting and a contingent right in the rents upon payment in full of the indebtedness under the Mortgage, . . . but neither gives the Debtor a license to use the rents in the Plan.

17

> . . . .
>
> Although the Debtor may retain some interest in the rents, it does not have the right to receive and use the rents as it wishes.

*In re Highlands of Montour Run, LLC*, 450 B.R. at 833, 834, 835 (citations omitted).

**III. Conclusion**

For the reasons stated in this opinion, the Court will enter an order denying the Motion.

**Signed on March 17, 2014**                               /s/ Thomas J. Tucker
                                                                                       **Thomas J. Tucker**
                                                                                       **United States Bankruptcy Judge**